IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANUEL CRUZ, : | |
| : | |
| Petitioner : | |
| : | CIVIL NO. 4:10-CV-0207 |
| : | |
| v. : | (Judge McClure) |
| : | |
| WARDEN, : | |
| LSCI ALLENWOOD, : | |
| : | |
| Respondent : | |

## **MEMORANDUM**

August 10, 2010

## I.     Introduction

Petitioner Manuel Cruz ("Petitioner" or "Cruz"), an inmate presently confined in the Moshannon Valley Correctional Institution in Philipsburg, Pennsylvania, initiated the above action *pro se* by filing a petition for writ of habeas corpus ("petition") under the provisions of 28 U.S.C. § 2241.  (Rec. Doc. No. 1.)  At the time of filing, Cruz was confined at the Allenwood Low Security Correctional Institution ("LSCI Allenwood") in White Deer, Pennsylvania.

Cruz alleges that the Federal Bureau of Prisons ("BOP") violated the Equal Protection Clause of the Fourteenth Amendment by sanctioning him with the  loss of visiting and telephone privileges for thirteen (13) years.  (*See* Rec. Doc. No. 1 at 1-3.)

He also alleges that there are no time restraints on civil rights violations, and therefore the BOP improperly rejected his administrative remedies raising Equal Protection claims as untimely. (*See id.* at 2.)

Although he does not specifically identify the disciplinary proceedings that resulted in the sanctions he challenges in the instant petition, Cruz attached two Discipline Hearing Officer ("DHO") Reports to the petition from hearings that occurred while Cruz was an inmate at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"). These DHO Reports reflect that, on January 14, 2005, Cruz was found guilty of the charges set forth in Incident Report Number 1282861, and on October 2, 2007, he was found guilty of the charges set forth in Incident Report Number 1635135. (Rec. Doc. No. 1 at 12-18.) As relief in the instant petition, Cruz requests that this Court find that the sanctions of loss of visiting and telephone privileges imposed after those guilty findings violate the Equal Protection Clause. (*See id.* at 3.) He requests that we either direct the BOP to reconsider the sanctions or vacate the sanctions.

By Order dated February 17, 2010, we directed Respondent to show cause within twenty-one (21) days why the petition should not be granted. (Rec. Doc. No. 3.) A response to the petition was filed on March 10, 2010. (Rec. Doc. No. 4.) Although we notified Petitioner in our show cause order of his opportunity to file a

reply brief within fourteen (14) days of receipt of Respondent's filing (*see* Rec. Doc. No. 3 ¶ 5), Petitioner did not file a reply brief. Accordingly, the petition is ripe for disposition. For the reasons set forth below, the petition will be dismissed.

**II.    Factual Background**

   **A.    Petitioner's Conviction and Sentence**

On November 24, 1999, Cruz was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 240 month term of imprisonment,to be followed by a five (5) year term of supervised release. (Rec. Doc. No. 4-2 at 3, D. Weber Decl., ¶ 2.)[1] The sentencing followed Cruz's conviction of conspiracy to distribute heroin. (*Id.*) His current projected release date via good conduct time release is May 20, 2017. (*Id.*)

   **B.    Incident Report No. 1282861**

On November 16, 2004, at approximately 5:00 p.m., an investigation conducted by the BOP's Special Investigative Services ("SIS") concluded that Cruz had attempted to introduce narcotics into FCI Fort Dix. (*Id.* ¶ 3; Rec. Doc. No. 4-2 at 9-10, 11/16/04 Incident Report.) At 7:05 p.m. on that same date, Intelligence Officer N. Thornton issued an Incident Report against Cruz setting forth the following charges:

---

[1]Citations to page numbers refer to the page number on the CM/ECF electronic record.

3

(1) Attempted Introduction of Narcotics (Code 111-A); (2) Use of Telephone to Further Criminal Activity (Code 197); and (3) Unauthorized Use of Mail (Code 410). (Rec. Doc. No 4-2 at 9 §§ 9, 12, 13.)  A copy of the Incident Report was delivered to Cruz on November 17, 2004 at approximately 7:11 a.m. by Lieutenant J. Anderson. (*Id.* §§ 14-16.)

The Incident Report contains a description of the incident, which was alleged to have begun on August 16, 2004 at approximately 10:43 a.m. when Cruz spoke to a male on the telephone that he referred to as "Narci."  (*Id.* § 11.)  During his telephone conversation with "Narci," Cruz stated as follows:

> . . . Remember that thing I told you? . . . Well look, prepare it because he's going to bring it to me . . . . You prepare it in a balloon . . And you put the three in there.  You clean it good . . . put the three, clean them real good and put the three in there real tight.  Close it and tie it again because you know that's going inside . . .

(*Id.*)  The Incident Report further describes a telephone call that Cruz placed on September 6, 2004 at 10:34 p.m. to Wilson DelaCruz.  (*Id.*)  During his phone conversation with DelaCruz, Cruz stated as follows:

> [H]e's going to fix you a bag, I can't explain it to you good, a bag of those balloons, of gloves, of gloves.  To prepare a thing to sell here, I'm going to send you a letter and I'm going to explain.

(*Id.*)

The Incident Report states that, on September 8, 2004, an outgoing letter that

Cruz addressed to DelaCruz was intercepted. (*Id.*) In the letter, Cruz wrote the following:

> I have a favor that is very economical and easy. My brother Narciso is going to prepare in a birthday balloon 3 bag of marijuana real tight, for every bag I can get more or less 500.00 or 600.00 dollars for a total of 1,500.00 dollars approximately OK- Wilson you have come to the Prison and you know that they don't search, take your pants off to search or anything at the entrance. The only thing that you have to do is put on some Jockey underwear and put the balls in the underwear, when you get here go to the bathroom, take them out put them in your pocket, buy some potato chips and a soda and then give it to me. I will swallow it and then the next day I will go to the bathroom and let it out.

(*Id.* at 9-10 § 11.)

The Incident Report states that, in addition to the aforementioned telephone calls and letter, the charges were based upon other telephone calls and Cruz's own admission. (*Id.* at 10 § 11.) The Report further states that Cruz's attempt to introduce narcotics into a federal prison was unsuccessful only because DelaCruz was unwilling to participate in the scheme, and "Narci" was not approved on Cruz's visiting list. (*Id.*)

The FBI reviewed the case and returned it to the BOP for disposition. On January 10, 2005, Lieutenant Turner completed a pre-hearing investigation. (*Id.* at 11.) During that investigation, Cruz stated as follows: "I am guilty. I did say and do those things. I got to do something I have twenty years." (*Id.* § 24.) Lieutenant Turner provided the following Comments and Conclusions:

5

> Based on the reporting staff member statement in section #11 of this incident report, supporting documentary evidence, and inmate Cruz['s] admission to the charges it is my opinion that this incident report is warranted as written.

(*Id.* § 26.) Turner recommended that Cruz remain in the Special Housing Unit ("SHU") and referred the Incident Report to the unit team for further disposition. (*Id.* § 27.)

On January 11, 2005 at 3:40 p.m., a Unit Disciplinary Committee ("UDC") hearing was held, after which the UDC referred the charges to a DHO for further hearing. (*Id.* at 12, Notice of Discipline Hearing.) At that time, Cruz was provided Notice of Discipline Hearing Before the DHO. (*Id.*) Although he was informed both of his right to have a full-time staff member represent him at the hearing, and of his right to call witnesses and present documentary evidence, Cruz waived these rights. (*Id.*) Cruz also was provided with a copy of the "Inmate Rights at Discipline Hearing," which he signed in acknowledgment of his having been advised of those rights. (*Id.* at 13-14.)

On January 12, 2005 at 9:30 a.m., Cruz appeared before DHO Steven T. Morton and admitted to the charges against him. (*Id.* at 5, DHO Report, §§ I B, III B.) The summary of Cruz's statement reflects that he stated that he did not want or need a translator, and further stated, "[T]he report is true, I made a mistake." (*Id.* § III B.) The DHO found that, on January 21, 2004, Cruz had a previous incident where he

6

introduced narcotics into FCI Fort Dix, and that on prior dates, Cruz had used the telephone to further criminal activity. (*Id.* at 6 § V.)

The DHO specified that, in reaching the conclusion that Cruz had committed the prohibited acts contained in the November 16, 2004 Incident Report, he relied on the Incident Report itself; the investigative report of Intelligence Officer N. Thornton; Cruz's Telephone Activity Report; Inmate Telephone Monitoring Reports; a photocopy of the letter and envelope written by Cruz to Wilson DelaCruz; and Cruz's statement to the DHO in which he acknowledged that the Incident Report was true. (*Id.* at 6-7 § V.) In particular, the DHO noted that the account of the telephone conversations in the Incident Report was verified by the Telephone Monitoring Report. (*Id.*) In addition, the DHO observed that Cruz told N. Thornton in an interview that he wrote the letter addressed to DelaCruz, thereby verifying the information contained in the Incident Report. (*Id.*)

The DHO sanctioned Cruz for his attempt to introduce narcotics into the institution with sixty (60) days disciplinary segregation; disallowance of forty (40) days of good conduct time; forfeiture of 270 days non-vested good conduct time; loss of visitation privileges for thirteen (13) years; and loss of telephone privileges for thirteen (13) years. (*Id.* at 7 § VI.)

The DHO sanctioned Cruz for his use of the telephone to further criminal

activity with sixty (60) days disciplinary segregation suspended pending 180 days of clear conduct, as well as the aforementioned loss of earned and non-vested good conduct time, telephone privileges and visitation privileges. (*Id.*) DHO Morton provided the following reasons for the sanctions imposed:

> Use of Telephone to Further Criminal Activity, Introduction of Marijuana (Attempted) and Unauthorized Use of Mail as documented in this incident, demonstrates a disregard for the rules and regulations as established, could result in marijuana being introduced into this institution which could seriously disrupt the orderly running of the institution as others may use violence against you in an effort to obtain the substances. The use of the telephone to continue Criminal Activity also demonstrates your willingness to be involved in criminal activity that may result in serous breaches of security at this facility.
>
> The suspended Disciplinary Segregation for Code 197 is to deter you from committing this or any other type of Prohibited Acts in the future. The Disciplinary Segregation, Disallowance of Good Conduct Time, Forfeiture of Non-Vested Good Conduct Time and the Loss of Privileges is meant to demonstrate the seriousness of these offenses to you as well as everyone incarcerated at this facility.

(*Id.*) DHO Morton provided Cruz with a copy of his DHO Report on January 14, 2005. (*Id.* at 8 § IX.)

### C. Incident Report Number 1635135

On October 2, 2007, while confined at FCI Fort Dix, Cruz was found guilty of "Possession of a Hazardous Tool- A Cell Phone," as set forth in Incident Report Number 1635135. (*Id.* at 16-18.) The DHO Report shows that Cruz was sanctioned with sixty (60) days disciplinary segregation, loss of forty (40) days good conduct

time, forfeiture of sixty (60) days non-vested good conduct time, five (5) years loss of phone privileges (commencing December 2, 2031), sixty (60) days loss of commissary privileges, and sixty (60) days loss of visitation privileges (concurrent with previous sanction). (*Id.*)

### III. Discussion

#### A. Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust his administrative remedies before filing a petition for a writ of habeas corpus. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); *e.g.*, *Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted).

The BOP has a three-level Administrative Remedy Program that is available to inmates for "review of an issue which relates to any aspect of their confinement." 28

C.F.R. § 542.10.  Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined through the submission of a BP-9 form.  *Id.* at § 542.14(a).  If dissatisfied with the response, the inmate may appeal an adverse decision first to the Regional Office and then to the Central Office of the BOP.  *Id.* at § 542.15(a).  An exception is made for DHO appeals, which are first raised directly to the Regional Director and then to the Central Office.  *Id.* at § 542.14(d)(2).  No administrative remedy appeal is considered to have been fully exhausted until it has been denied by the Central Office of the BOP.  *Id.*

BOP Records reflect that, as of the time of the filing of a response to the petition on March 10, 2010, Cruz exhausted his administrative remedies with regard to his appeal of the sanctions that were imposed against him in connection with Incident Report Number 1282861.  (*See* Rec. Doc. No. 4-2 at 15-19, Administrative Remedy Generalized Retrieval (Remedy ID Numbers 365009-R2 and 365009-A1).)

However, BOP Records reflect that Cruz has not exhausted his administrative remedies with regard to the sanctions that were imposed against him in connection with Incident Report Number 1635135.  (*See id.*)  Although Cruz attempted to appeal

those sanctions, which were imposed on October 2, 2007, he did not do so in a timely manner. Rather, he waited until almost two (2) years later, on September 24, 2009, to file Administrative Remedy 557610-F1. (*See id.* at 18, 9/24/09 Rejection Notice.) The administrative remedy was rejected because it was untimely and because Cruz should have filed his appeal from a DHO finding with the BOP's Northeast Regional Office, in accordance with 28 U.S.C. § 542.14(d)(2). (*See id.*)

Following the rejection of his administrative remedy, Cruz filed his Regional Administrative Remedy Appeal 557610-R1 on October 2, 2009. (*See id.*) This remedy was rejected on October 6, 2009 because Cruz failed to attach a copy of the DHO Report to his appeal. (*See id.*) Cruz re-submitted his regional appeal at Remedy ID 557610-R2, on October 19, 2009. (*See id.* at 19.) On October 21, 2009, the Northeast Regional Office rejected this appeal as untimely because it was not received within twenty (20) days of the DHO Report. (*See id.*)

On November 18, 2009, Cruz filed a Central Office Administrative Remedy Appeal, identified as Remedy ID 557610-A1. (*See id.*) On January 7, 2010, the BOP Central Office rejected this appeal as untimely; however, Cruz was advised that, if he could provide documentation from staff that the untimely filing was not his fault, he could re-file his request with the region. (*See id.*)

The BOP's Administrative Remedy Generalized Retrieval for Cruz dated March

11

3, 2010 does not show any further administrative remedies filed by Cruz. (*See id.* at 15-19.) Contrary to Cruz's assertion in the instant petition, there is no exception to the time limits for exhausting administrative remedies for civil rights claims. Because Cruz did not timely file his administrative remedies with respect to the sanctions imposed after he was found guilty of the charges set forth in Incident Report 1635135, it is apparent that he has failed to exhaust his administrative remedies with regard to the imposition of these sanctions. Therefore, we will solely examine his claim in the instant petition relating to Incident Report 1282861.

### B. Equal Protection Claim

The remaining portion of Cruz's petition challenges the DHO's imposition of sanctions in the form of loss of telephone and visitation privileges after finding Cruz guilty of the charges set forth in Incident Report 1282861 on the basis that these sanctions violate the Equal Protection Clause of the Fourteenth Amendment.

We begin by observing that Cruz is not challenging the underlying disciplinary process or the sufficiency of the evidence for the DHO's guilty finding. He also is not challenging the loss of good time credit. The purpose of a petition for writ of habeas corpus is to allow a person in custody to challenge either the fact or duration of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). Federal habeas relief is unavailable unless the petition

attacks "the validity of the continued conviction or the fact or length of the sentence." *Leamer*, 288 F.3d at 542. Under § 2241, a petitioner also may challenge the "execution" of his sentence, meaning how it is "put into effect" or "carr[ied] out." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243-44 (3d Cir. 2005) (allowing habeas challenge under § 2241 to prison's refusal to transfer inmate to halfway house). In contrast, where "a judgment in Petitioner's favor would not affect the fact or duration of Petitioner's incarceration, habeas relief is unavailable." *See Suggs v. Bureau of Prisons,* 2008 WL 2966740, at *4 (D.N.J. July 31, 2008) Rather, "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate." *Leamer*, 288 F.3d at 542.

Because Cruz's challenge to his loss of phone and visitation privileges on the basis that these sanctions violate the Equal Protection Clause does not constitute a challenge to the length or fact of his imprisonment, it is not properly pursued in a § 2241 habeas petition.

Even if this challenge were properly pursued in this context, we observe that Cruz has not stated an Equal Protection claim upon which relief may be granted. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. As such, it

13

requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To prevail on his Equal Protection claim, Cruz must show both that he was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of Cleburne*, 473 U.S. at 439. *See also Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 424 (3d Cir. 2000); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Cruz merely states that he was "punished differently than others" generally; he does not allege that he was punished differently than others who committed the same offenses for which he was found guilty. (*See* Rec. Doc. No. 1 at 2.) As such, he does not explain how the DHO punished him differently than others who have been found guilty of the same offenses, particularly where the DHO was authorized to sanction Cruz with the loss of phone and visitation privileges upon finding him guilty of a Code 197 Greatest Category Offense. *See* 28 C.F.R. § 541.13 tbl. 3 (authorizing loss of privileges for Greatest Category Offenses, including use of the telephone to commit further criminal activity). Moreover, Cruz does not claim that the discrimination he allegedly suffered was intentional on the part of the Disciplinary Hearing Officers who sanctioned him. As a result, he fails to state an Equal Protection claim upon which relief may be granted, and the remaining claim in his petition must be

dismissed.

## IV. Conclusion

For the foregoing reasons, Cruz's petition for writ of habeas corpus (Rec. Doc. No. 1) will be dismissed. An appropriate Order follows.

s/ James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MANUEL CRUZ, :
:
    Petitioner :
: CIVIL NO. 4:10-CV-0207
:
v. : (Judge McClure)
:
WARDEN, :
LSCI ALLENWOOD, :
:
    Respondent :

## **ORDER**

August 10, 2010

In accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The petition for writ of habeas corpus (Rec. Doc. No. 1) is **DISMISSED**.

2.    The Clerk of Court is directed to **CLOSE** this case.


                                                s/ James F. McClure, Jr.
                                                JAMES F. McCLURE, JR.
                                                United States District Judge